Rogers *v.* Ownbey.

4-3900

Opinion delivered June 10, 1935.

*John Mayes* and *Karl Greenhaw,* for appellant.

*U. A. Lovell* and *Duty & Duty,* for appellees.

McHaney, J. In 1928 appellant and the late W. G. Ownbey became owners as partners of a drug store in Fayetteville, Arkansas, later called the Quaker Drug Store. The capital investment was $9,000, of which appellant owned two-ninths and Ownbey seven-ninths interest. The firm carried for its benefit a policy of life insurance in the sum of $5,000 on the life of Ownbey who died, leaving surviving him his widow and two children as his only heirs at law. They succeeded to his seven-ninths interest in said drug store, and thereafter entered into a new partnership agreement with appellant, in which it was agreed that, in consideration of appellant's release to them of his interest in said insurance, his interest in the drug store should thereafter be increased by one-ninth, making him a one-third owner therein. It was further provided in said agreement that, in the event said Quaker Drug Store should be sold at any time

during the partnership for a sum in excess of $9,000, appellant would pay the Ownbey widow and heirs $200, but, if sold for a less sum, nothing should be paid. Thereafter on September 3, 1929, appellant sold his undivided one-third interest in said drug store to the defendant, Clyde N. Phelps, for a consideration of $4,000, of which $3,000 was paid in cash and an unsecured promissory note of $1,000 for the balance. Of the cash purchase price Phelps and appellant obtained $1,500 thereof on their note to the Arkansas National Bank of Fayetteville, and, to secure appellant against loss thereon, Phelps gave appellant a chattel mortgage on his undivided one-third interest in all the store fixtures in the Quaker Drug Store, and same was duly filed for record on the same date. Phelps failed to pay his $1,000 note to appellant when due, and judgment was secured thereon in the circuit court. He also failed to pay his $1,500 note to the bank, and, on March 30, 1933, appellant was forced to pay same in the sum of $1,730, including interest, and thereafter on July 6, appellant brought this action against Phelps, and others, the appellees herein, to foreclose said mortgage. In March, 1933, Phelps was adjudicated a bankrupt, and the trustee in bankruptcy, with the approval of the referee, disclaimed any interest in and to the drug store on behalf of the bankrupt's estate. On June 27, 1933, the Ownbeys sold and conveyed said drug store and all its equipment and fixtures to appellees, King and Steele, who in turn executed and delivered a chattel mortgage to Sam Wheeler as trustee for the creditors, there being approximately $12,000 indebtedness against said store at that time. The sale was made for $8,000 which was used to pay debts, and the Ownbeys paid or secured the remaining $4,000 to the creditors. The amount of the debts of the firm at the time appellant sold to Phelps was approximately $6,000.

The trial court found that appellant's mortgage covered only Phelp's interest in the fixtures subject to partnership debts, and that his lien attached only to Phelps interest in the surplus after payment of such debts, and, there being no surplus to which his mortgage could attach, foreclosure was refused. On the interven-

tion of the Ownbeys, the court gave judgment in their favor for $200 on account of the sale to Phelps. This appeal followed.

The sale to King and Steele was authorized by the Bankruptcy Act. Title 11, § 23, USCA provides: "In the event of one or more, but not all of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit and account for the interest of the partner or partners adjudged bankrupt.

It will be noticed that, by reason of this sale, the Ownbey interest lost more than $4,000 which they were required to pay or secure to creditors, in addition to their share of the partnership. The mortgage of Phelps to appellant was simply a mortgage on his undivided interest. The rule in such a case is stated in *Crow* v. *Rogers,* 181 Ark. 633, 26 S. W. (2d) 1112, where we quoted from 47 C. J., 919, § 410, as follows: "The rights of the creditor of an individual partner in the firm assets are confined to the share or interest of his debtor in such assets, and, since a partner's share thereof can be ascertained only after the firm debts have been paid, an individual creditor is entitled to be paid only out of the debtor partner's share in the surplus which remains after the firm debts have been paid, and the equities between the partner and his co-partners have been adjusted, and the partner's share has been ascertained and set apart."

Since it appears that no part of the mortgage property is left after payment of the firm's debts, the court correctly denied the foreclosure of appellant's mortgage. Appellant contends however that the debts existing at the date of the mortgage only should be taken into account, and that, since the proof shows that those particular debts were paid down to $1,881, he should be permitted to foreclose his mortgage subject to his liability for one-third of said amount. Appellant is wrong in this contention. While it is true that the debts amounted at the date of mortgage to $6,000, and that some of those par-

ticular debts were paid, it is likewise true that other debts were incurred, and there is no showing that the debts of the firm were ever less than $6,000 from that time to the date of dissolution of the partnership. While some debts were paid, others were incurred, and the liabilities increased until they owed $12,000 at the date of dissolution. Since appellant's mortgage must be held subsequent and subject to the payment of firm debts, he must be held to have taken the risk of the debts of the firm increasing subsequent to his mortgage. The fact that he did not incur the debts can make no difference. The partnership did incur them, and the rule above stated applies.

With reference to the $200 adjudged against appellant, we think the court was correct in this holding. Appellant sold his interest in the partnership for $4,000, on terms satisfactory to him. Payment of the $200 was demanded of him at the time and while he declined to pay until the notes were paid. He did recognize his liability for that debt, and the court correctly rendered judgment against him. Had the whole drug store been sold on the same basis, it would have brought $12,000, in which event he would have been entitled to $4,000, and this is what he got by his private sale.

We find no error, and the judgment is affirmed.