McLERKIN *v.* SCHILLING.

4-4359

Opinion delivered July 6, 1936.

*Jeff Bratton*, for appellant.
*Partlow & Rhine*, for appellee.

McHANEY, J. Appellant is the widow of the late W. R. McLerkin who, at the time of his death intestate

in December, 1934, was engaged in the automobile business as a partner with the appellee, Arthur Schilling, under the firm name of Paragould Motor Service Company. He left no personal property except his one-half interest in said partnership assets, which partnership indebtedness exceeded its assets. Appellant filed her claim in the probate court for the statutory allowance of $300 in her favor under § 80, Crawford & Moses' Digest. Her claim was disallowed in said court and again disallowed in the circuit court. She has brought the case here for review. The facts are stipulated, and, in addition to the above, the following: "The only question to be determined by the litigation involved herein is: Can a widow, under the provisions of § 80 of Crawford & Moses' Digest of the statutes of Arkansas, claim and receive from and out of the partnership personal property wherein her husband is interested, the statutory allowance of three hundred dollars ($300) as provided for in said section where and when the indebtedness of the partnership exceeds the value of the assets?

"It is conceded that in this case the only personal property, from and out of which the widow could claim under any circumstances, are the partnership assets; that W. R. McLerkin had no other property from and out of which the widow could claim her statutory allowance."

The answer to this question must be in the negative, just as it was in the probate and circuit courts. The statute, said § 80 provides: "When any person shall die leaving a widow * * * and it shall be made to appear to the court that the personal estate of such deceased person does not exceed in value the sum of three hundred dollars, the court shall make an order vesting such personal property absolutely in the widow * * * when the court is satisfied that reasonable funeral expenses of such person not to exceed twenty-five dollars have been paid or secured and *in all cases* where the personal estate exceeds in value the sum of three hundred dollars a widow * * * may retain the amount of three hundred dollars out of such personal property at its appraised valuation."

It will be noticed that the statute is applicable to "the personal estate of such deceased person." Partnership assets are not the personal estate of the individual partners during their lifetime, and death of one of the partners does not make them such. Partnership assets belong to the partnership, and not to the individual partners. Such assets never become the personal estate of the individual partners until the partnership is dissolved, its debts paid, and the remaining funds distributed. The death of one of the partners dissolves the partnership. We have so held since *Bernie* v. *Vandever*, 16 Ark. 616. In the same case and ever since, it was and has been held that the surviving partner is entitled to the partnership property and effects for the purpose of paying the debts of the firm. *Marlatt* v. *Scantland*, 19 Ark. 443; *Adams* v. *Ward*, 26 Ark. 135; *Cline* v. *Wilson*, 26 Ark. 154; *Hill* v. *Draper*, 54 Ark. 395, 15 S. W. 1025; *Coolidge* v. *Burke*, 69 Ark. 237, 62 S. W. 583; *Evans* v. *Hoyt*, 153 Ark. 334, 240 S. W. 409. In the early case of *Richardson* v. *Adler, Goldman & Co.*, 46 Ark. 43, it was said: "The members of any insolvent firm are not entitled to the exemptions, allowed by law, out of the partnership property after it has been seized to satisfy the demands of creditors of the firm. This proposition is well settled both upon reason and authority. The interest of each partner in the partnership assets is his portion of the *residuum* after all the liabilities of the firm are liquidated and discharged. Property belonging to the firm cannot be said to belong to either partner as his separate property. It is contingent and uncertain whether any of it will belong to him on the winding up of the business, and the settlement of his accounts with the firm. 'Joint property is deemed a trust fund, primarily to be applied to the discharge of partnership debts, against all persons not having a higher equity. A long series of authorities has established this equity of the joint creditors, to be worked out through the medium of the partners; that is to say, the partners have a right *inter sese,* to have the partnership property first applied to the discharge of the partnership debts, and no partner has any right, except to his own share of the

residue, and the joint creditors, are, in case of insolvency, substituted in equity to the rights of the partners, as being the ultimate *cestuis que trust* of the fund to the extent of the joint debts.' '' Citing cases.

In *Porch* v. *Arkansas Milling Co.*, 65 Ark. 40, 45 S. W. 51, the Richardson case was cited and the above quotation copied and followed, and it was there further said: "In opposition to the doctrine of these cases," (cases previously cited that exemption statutes should receive a liberal construction) "the weight of authority sustains the rule that partners cannot, during the continuance of the partnership, claim an individual exemption in the partnership property." Citing a number of cases. Continuing, the court said: "The rule is said to rest upon the principle, well recognized in the decisions, that the title and ownership of partnership property is in the partnership, and neither partner has any exclusive right to any part of it. * * * When the debts of the partnership are paid, if any surplus of partnership property remains, he can claim his exemption in his part of this surplus." See, also, *Swift & Co.* v. *Cox*, 138 Ark. 606, 212 S. W. 83. In the recent case of *Rogers* v. *Ownbey*, 190 Ark. 1144, 83 S. W. (2d) 818, we held, to quote a syllabus: "One having a mortgage on a partner's share in the firm property has a lien only on the interest of the partner in the surplus remaining after payment of all the partnership debts, whether the debts were incurred before or after the mortgage was executed."

In *Coolidge* v. *Burke, supra,* Judge Wood quoted from Chief Justice Shaw in *Howard* v. *Priest*, 5 Metc. (Mass.) 582, the following: "The true and actual interest of each partner in the common stock is the balance found due him after the payment of the debts, and the adjustment of the partnership account. * * * And, as the widow and heirs claim only in the right of the husband and father, such derivative right, in equity, will extend no further in behalf of the wife and children than that of the partner from whom it was derived." The court then said: "This is the inevitable result, it seems to us, under the law peculiar to partnership property. The law of descent and distribution operates upon the prop-

erty of the individual, and not upon the property of the firm, and there is no individual property until the firm property is at an end, which does not occur until its debts are paid, its affairs closed, and the residue of the assets distributed."

So here, as stated above, the statute, said § 80, operates only on the personal property of the deceased, and, since Mr. McLerkin had no individual personal property, there was nothing out of which appellant could claim the benefits of the statute. To permit her claim to be allowed out of assets of the insolvent partnership, would be tantamount to allowing the claim against appellee personally, as he is liable for the unpaid debts of the partnership, which would be augmented by the amount of appellant's claim.

The judgment must be affirmed.