Nix *v.* Ormond.

5-3215                                                              377 S. W. 2d 11

Opinion delivered March 30, 1964.

*John B. Driver,* for appellant.

*Opie Rogers, N. J. Henley,* for appellee.

Jim Johnson, Associate Justice. This appeal arises from a suit in ejectment filed by appellees, Hallie C. Ormond and Jeanne C. Ormond, his wife, against appellants Leatrice R. Nix and Virgil Lane in Van Buren Circuit Court on January 3, 1963. Appellees alleged that they are owners of certain property in Van Buren County, which was described and their title deraigned from the State, and alleged that appellants were in unlawful possession of the lands, using them for pasture and other purposes and prayed judgment for the recov-

ery of their property and damages for the unlawful possession and detention of the land in the sum of $1,000.00. Appellant Lane demurred, alleging that he was merely the agent, servant and employee of appellant Nix and prayed for dismissal of the complaint as to him. Appellant Nix answered, alleging that she had first and paramount right of possession and ownership of the property under a purchase contract of November 1957 with W. C. and Mary Jenkins (appellees' predecessors in title). She cross-complained against appellees and named the Jenkins and C. W. Scarsdale as defendants in the cross-complaint, prayed that the purchase contract with the Jenkins be specifically enforced, that the subsequent deeds from Jenkins to Ormond to Scarsdale and back to Ormond be cancelled and set aside as a cloud on appellant Nix's title, and finally prayed damages against appellees for use of the land and hay and timber cut in the sum of $3,500.00.

Appellees and the cross-defendants demurred to the cross-complaint on the grounds, *inter alia*, that (1) the cross-complaint shows on its face that the alleged purchase contract was dated October 23, 1957, and the last correspondence relating to it was dated November 7, 1957, that the cross-complaint was filed on February 8, 1963, which was more than five years after the contract was made and more than five years after the last correspondence relating to it was had; (2) that the cross-complaint shows on its face that the Jenkins had an option to return a $300.00 earnest money payment or to do such curative work as might be recommended by the title examiner and that the Jenkins exercised their option to refund the $300.00, and appellant Nix accepted the return of the $300.00, which constituted a waiver of any rights under the contract; and (3) that never having asked or insisted on performance of the purchase contract, appellant is now estopped from claiming any right under the contract. The trial court sustained this demurrer, dismissed the cross-complaint against the Jenkins and Scarsdale and found that the issues in the case were then based on appellees' complaint and appellant

Nix's general denial. The trial court sitting as a jury heard the testimony of the parties and their witnesses and found appellees to be the owners of the lands described in their complaint, that appellants admitted that appellees own all of this land except a small portion lying between an old slough and the present channel of the Red River consisting of approximately five acres, that appellees are the owners of the five acres and that the present channel of the Red River was the boundary of appellees' land, that appellants failed to show by evidence any title or right of possession of any of the lands and should be ejected, and that appellees' prayer for damages should be denied. From such judgment appellants have appealed, urging, first, that the trial court erred in sustaining the demurrers to the cross-complaint and in finding that appellant Nix failed to allege sufficient fraud to toll the statute of limitations.

Appellant Nix's cross-complaint alleges that:

"1. . . . [Appellant] Nix and defendants W. C. Jenkins and Mary Jenkins on October 23, 1957, made and entered into a written contract whereby [the] Jenkins agreed to sell lands described in complaint . . . for $2,500.00. Copy of said contract is attached hereto marked Exhibit "A" . . .

"2. Cross plaintiff executed and delivered to W. C. and Mary Jenkins her check to said lands in the sum of $300.00 under the terms of said contract. That cross defendants W. C. and Mary Jenkins caused to be prepared and delivered to cross plaintiffs attorney for examination an abstract of title under the terms of said contract. October 30, 1957, the attorney's written opinion on title was handed down delivered to cross plaintiff with a copy to cross defendants, Jenkins. Certain curative measures, of minor character, were requested in said opinion on said date and the cross defendants, in an effort to evade performance of the contract and to defraud the cross plaintiff and in deliberate breach of said contract, by quitclaim deed conveyed said lands to cross defendants, Hallie C. Ormond on November 4, 1957.

"On November 5, 1957, cross defendants W. C. Jenkins and Mary Jenkins employed services of counsel who notified cross plaintiff that they did not desire to execute a deed required in the contract and said counsel returned in his letter to the cross plaintiff the aforesaid $300.00 check.

"Letter containing cross defendants refusal to take curative measures and check was not received by cross plaintiff until November 7, 1957, on which date cross defendants, Hallie C. and Jeanne M. Ormond conveyed said land by quitclaim deed to C. W. Scarsdale.

"C. W. Scarsdale on June 6, 1960 conveyed by quitclaim deed said lands to Hallie C. Ormond.

"3. Cross plaintiff has only recently discovered that cross defendants Hallie C. Ormond and Jeanne M. Ormond are related to cross defendant C. W. Scarsdale and wife and they are and were at all times herein referred to joint venturers in various business activities in various phases of timber and lumbering business. After conveying said lands by quitclaim deed to cross defendants Scarsdale, Hallie C. Ormond, his agent, servants, and/or employees cut the timber from said lands and sold a portion of it to Scarsdale, and in fact cross plaintiff now discovers that defendants in cross complaint H. C. Ormond and his wife have never relinquished possession, dominion and control over said lands to any persons during the period of time from November 4, 1957 to the date of the filing of this complaint.

"4. The aforesaid course of conduct by all of the cross defendants was had and done with a deliberate intent and design to cheat, hinder, and defraud cross plaintiff and to prevent her acquiring title to said property by proper conveyance from cross defendants, Jenkins, and in the enforcement of the terms of her written contract with cross defendants, Jenkins . . ."

The purchase contract attached to the cross-complaint and marked "Exhibit A" contains the following paragraph:

"First party [Jenkins] covenants and agrees to and with Second Party [appellant Nix] that they will, at their own expense, furnish to attorney for second party an abstract of title to the above described lands for the examination of said attorney; and in the event title is not approved by said attorney, they will pay back the $300.00 paid herewith, and/or will take such curative measures as are recommended by said attorney to be in a position of conveying to second party a good and merchantable and marketable title to said lands."

The Jenkins clearly had an option to refund the $300.00 deposit or do the curative title work requested. If appellant Nix considered their election to refund the deposit and thus cancel the contract was improper or premature, the burden was on her to demand performance of the contract. More than five years has passed, so that appellant's cross-complaint is clearly barred by the statute of limitations unless tolled by fraudulent concealment. Reviewing the pleadings quoted above, there are simply not enough facts set out to sustain, or even to really raise, the assertion of fraudulent concealment of a cause of action from appellant. As stated in *Williams* v. *Purdy*, 223 Ark. 275, 265 S. W. 2d 534, which see: "There are no allegations of such affirmative and positive acts of fraudulent concealment on their part as to toll the running of the statute of limitations nor is the fraud alleged of such character as necessarily implies concealment."

Appellants' second point urged for reversal is that the trial court erred in rendering judgment in ejectment in behalf of appellees.

The boundary line of the five acres in dispute is described as "all that part of the N½ of the NE¼ of Section 16 . . . that lies North of Red River, *said River being the line, . . .*" [Emphasis ours.] Appellant Nix (whose property joins appellees' property on the south) tried to prove that when the original government survey of the property was made prior to 1830, the old slough was then the channel of the Red River, that in 1956 when

she had the property surveyed she had instructed the surveyor to use the old government field notes for the survey, that the then owner (Jenkins) was present during the survey, accepted the old slough as his boundary line instead of the present channel of the Red River (all of which Jenkins denied), and thus the five acres was a part of appellant Nix's property. The government field notes were not in evidence, apparently the testimony of the surveyor was not available and no evidence was introduced indicating that this section of the Red River ever flowed anywhere but in its present channel. The trial court sitting as a jury heard all the evidence and testimony and found as a fact that the present channel of the Red River is the boundary of appellees' land. Upon review of the whole case we cannot say that there is no substantial evidence to support the judgment.

Affirmed.